```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                     CENTRAL DIVISION at LEXINGTON


UNITED STATES OF AMERICA,     )
                              )
     Plaintiff,               )    Criminal Action No.
                              )         5:17-CR-6-JMH
v.                            )
                              )
JOYCE MINTON,                 )        MEMORANDUM
AARON BROOKE WARREN, and      )      OPINION & ORDER
JAMES MINTON,                 )
                              )
     Defendants.              )
```

                    *   *   *   *   *   *   *

This matter is before the Court on the Motion to Quash Nine Subpoenas to Produce Documents filed by the United States [DE 41] and the Motion to Quash filed by Clark Machine Tool & Die, Inc. ("Clark Machine"), Ray E. Clark, Jr., Barbara Sue Clark and Danny Ray Clark (collectively referred to as the "Clarks") [DE 45]. Defendants, Joyce Minton, Aaron Brooke Warren ("Warren"), and James Minton (collectively referred to as "Defendants") filed Responses to the Motions to Quash [DE 47, 48] and the Court conducted a Motion Hearing on the Motions to Quash on March 9, 2017 [DE 49]. During the hearing, the Court ruled that Defendants are not entitled to all information requested in the subpoenas for the reasons stated in the record, but that Defendants would have until Thursday, March 16, 2017, to file *ex parte* statements detailing dates, places, checks and bank records that specifically

relate to proof of permission given by the alleged victims to incur such expenditures [*Id.*]. On March 17, 2017, Defendants jointly filed a Motion for Leave to File Sealed and *Ex Parte* Motion [DE 51], which is also currently pending before the Court. This matter is now ripe for review.

I.  FACTUAL BACKGROUND

Defendants have each been charged with mail fraud and bank fraud against Clark Machine. According to the Indictment [DE 1], Clark Machine was operated by the Clarks. Joyce Minton was employed as an office manager and bookkeeper; her son, Warren, was employed as shop foreman; and her husband, James Minton, was a contractor. The Indictment charges that from around February 2000 continuing through May 2016, Defendants engaged in various means of mail and bank fraud in order to defraud and obtain money and property by material misrepresentations and concealment of material facts [*Id.*]. For example, the Indictment alleges that Warren "collected from customers and personally kept money and property paid for work done by [Clark Machine's] employees, with its equipment, and on its premises, deceiving [Clark Machine], the employees, and the paying customers," and that Joyce Minton was aware of and aided this deception [*Id.* at ¶3]. The Indictment also alleges that Warren made and kept personal purchases using money, checks, and a credit card from Clark Machine and that Joyce Minton was aware and aided in this deception [*Id.* at ¶4].

2

Moreover, the Indictment alleges that Joyce Minton and James Minton "made and kept personal purchases using money and checks from [Clark Machine], deceiving [Clark Machine], including by concealing these personal purchases and falsely recording them as business expenses" [*Id.* at ¶5]. A full list of the personal purchases allegedly made using Clark Machine funds and paid for and/or received using the Postal Service or a commercial interstate carrier is set forth more fully in the Indictment, but these purchases include items such as a Santa Fe Max Dry Dual XT Dehumidifier ($2,163); Nike training shoes ($156.97); TaylorMade golf clubs ($847.99); Biondo Racing engine part and clothing ($3,127.99); and a Mark Williams Enterprises driveshaft ($2,250).

On February 27 and March 1, 2017, Warren's counsel signed and served nine subpoenas on Clark Machine and the Clarks, seeking a wide range of information, including a mirror copy of Clark Machine's Open Systems Accounting Software system; a mirror copy of Clark Machine's OSAS accounting system; a mirror copy of Clark Machine's Masterfile, including monthly and yearly financial reports and all video surveillance back-up files; Clark Machine's federal and state tax records from 2000 to the present; Clark Machine's original monthly credit card statements from 2000 to the present; a mirror copy of surveillance video in Clark Machine's possession; and the Clark's personal federal and state tax returns

3

and any correspondence with any taxing agency from 2000 to July 2016 [DE 41-1].

The United States and the Clarks both moved to quash these subpoenas on the grounds that they were not specific; they sought inadmissible evidence; that they demand evidence that has been provided; and that they are unreasonable and oppressive [DE 41, 45]. In Response, Defendants argue that "this case boils down to a dispute over permission" and that the evidence sought by the subpoenas is relevant to the Defendants' claims that they had the Clarks' knowledge and consent to use the company checkbook and/or credit card in the manner in which they did [DE 47].

The Court conducted a Motion Hearing on this matter and indicated its agreement with respect to the irrelevance, oppressiveness and lack of specificity with respect to the evidence sought by the subpoenas. However, in an abundance of caution, the Court took the Motions to Quash under advisement and provided Defendants with the opportunity to file *ex parte* statements detailing dates, places, checks and bank records that specifically relate to proof of permission given by the Clarks and/or Clark Machine to incur such expenditures. Defendants have now filed an *ex parte* motion requesting copies of all emails between specifically identified individuals; all Clark Machine surveillance video; and Clark Machine credit card statements for

4

specific months associated with certain counts in the Indictment regarding credit card expenditures [DE 51-1].[1]

## II. STANDARD OF REVIEW AND ANALYSIS

At the outset, the Court notes that discovery in criminal cases is more limited that the general discovery that is available to litigants in civil cases. *See Degen v. United States*, 517 U.S. 820, 825-826 (1996)(noting that a criminal defendant is entitled to rather limited discovery in comparison to a party in a civil case). Indeed, "there is no general constitutional right to discovery in a criminal case." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). Rule 16 of the Federal Rules of Criminal Procedure "requires the government to disclose to the defense before trial only specific categories of evidence." *United States v. Presser*, 844 F.2d 1275, 1284 (6th Cir. 1988). Moreover, "the discovery afforded by Rule 16 is limited to the evidence referred to in its express provisions." *Id*. at 1285. Rule 16 "provides no authority for compelling the pre-trial disclosure...of any other evidence not specifically mentioned by the rule." *Id*. (citations omitted).

---

[1] As Defendants' Motion was filed *ex parte*, the Court is mindful of Defendants' desire to keep the information provided to the Court confidential. Accordingly, herein, the Court will only discuss details provided to the Court in Defendants' Motion to the extent that it is strictly necessary.

5

With respect to subpoenas in a criminal case, Rule 17(c) of the Federal Rules of Criminal Procedure provides:

**(c) Producing Documents and Objects.**

**(1) In General.** A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

**(2) Quashing or Modifying the Subpoena.** On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive.

**(3) Subpoena for Personal or Confidential Information About a Victim.** After a complaint, indictment, or information is filed, a subpoena requiring the production of personal or confidential information about a victim may be served on a third party only by court order. Before entering the order and unless there are exceptional circumstances, the court must require giving notice to the victim so that the victim can move to quash or modify the subpoena or otherwise object.

See Fed. R. Crim. Pro 17(c).

However, "Rule 17(c) was not intended to provide an additional means of discovery. Its chief innovation was to expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials." Bowman Dairy Co. v. United States, 341 U.S. 214, 220 (1951). "It was not intended by Rule 16 to give a limited right of discovery, and then by Rule 17 to give a right of discovery in the broadest terms." Id.

6

In *United States v. Nixon*, 418 U.S. 683, 699-700 (1974), the United States Supreme Court held that "in order to require production prior to trial, the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by the exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'" The Supreme Court further explained that, against this background, three hurdles must be cleared: "(1) relevancy; (2) admissibility; (3) specificity." *Id*. at 700.

Despite being given a second opportunity to more narrowly tailor the requests made by the subpoenas and to more fully explain *ex parte* the relevance of this evidence sought to the defense in this case, Defendants have still failed to clear these hurdles. Defendants' *ex parte* motion states that Defendants have revised and narrowed their request for information to three categories: 1) all emails to and from one particular individual and two other individuals; 2) all Clark Machine surveillance video; and 3) the complete credit card statements for the Clark Machine credit card for twenty-one particular months. Contrary to Defendants' characterization, even the narrowed-down requests are still quite

7

broad, as they seek whole categories of emails, video and documents from a time period that spans many years.

Moreover, the Court is mindful that the burden of responding to Defendants' request to Clark Machine and the Clarks is quite significant. Preparing documents and other evidence for production in discovery is not necessarily a simple process. For example, Defendants note that the emails are being sought to show information that was sent and discussed between certain individuals "[e]ach month, and for many years." Thus, in order to prepare these emails for production, Clark Machine and/or the Clarks would need to segregate all of the emails between these individuals over the course of many years, review all of the emails to ensure that any confidential information was protected from disclosure, and then convert the emails into a format in which they could be produced to Defendants. Nowhere do Defendants make any mention of who would be responsible for incurring the costs of such an effort. While it is not unusual for parties to undergo a similar effort in the context of civil litigation, this is not civil litigation and the Clarks and/or Clark Machine are not on trial. Rather, the Clarks and Clark Machine are the alleged victims in this case. Thus, imposing the burden of a document production that is akin to a civil discovery production seems particularly unfair.

More critically, Defendants have still failed to demonstrate to the Court how any of the evidence being sought is relevant to their defense to the charges in the Indictment. At the hearing and in their pleadings, Defendants argue that these records are relevant to show that Warren made the purchases using Clark Machine's credit card; that Joyce Minton issued the Clark Machine checks that she issued; and that Joyce Minton accounted for these expenses in the way that she did, all with the Clarks' knowledge and permission. However, Defendants have failed to demonstrate to the Court how any of the evidence being sought from the Clarks or Clark Machine proves that the Defendants had permission to undertake the actions that are alleged in the Indictment. Rather, Defendants seek to engage in the type of inappropriate "fishing expedition" that is cautioned against in *United States v. Nixon*, 418 U.S. at 699-700, in the hopes of finding something that is possibly exculpatory.

For example, with respect to the emails being sought by Defendants, Defendants state that monthly financial statements prepared for Clark Machine are attached to these emails. According to Defendants, these statements contained information about the company's revenue and expenditures. From this, Defendants argue that these emails and attachments will show that the Clarks regularly reviewed these statements and frequently discussed various aspects of these statements in detail with Joyce Minton.

According to Defendants, this shows that the Clarks were aware of the expenditures being made, how the expenditures were accounted for, and that the Clarks not only gave their permission to the Defendants to make these expenditures, but specifically instructed Joyce Minton to do so. However, the fact that certain financial statements may have been forwarded to the Clarks for their review does not show that the Clarks gave Defendants permission to engage in the actions alleged in the Indictment. At the hearing, the Court made clear that it would consider narrowly-tailored requests for *specific* documents from *specific* dates that *specifically granted* Defendants permission to make certain purchases or write certain checks as outlined in the Indictment. However, Defendants still fail to identify a single, specific email that they are seeking, relying instead on a request for a broad category of emails, with no detailed information explaining how any particular email is relevant to the charges against Defendants. This simply is not the type of request that is appropriate under Rule 17(c).

In addition, Defendants purport that the surveillance video being sought will show the Clarks' knowledge of Defendants' conduct and the Clarks' permission and acquiescence of this conduct. The Court notes that the United States has repeatedly stated, both in pleadings and at the hearing, that Defendants have already been given all preserved surveillance video that is in the government's possession [DE 41]. According to Defendants, this video is only

10

of the exterior of the building.  Defendants purport that video surveillance of the interior of Clark Machine's shop floor exists, which they argue will show that Danny Clark knew of the purchases being made by Warren and, in fact, specifically instructed Joyce Minton to pay these charges.  However, Defendants again fail to provide any specific dates on which these activities allegedly occurred – or even offer a description of a specific instance on which they allege that these actions occurred – and instead broadly seek "any video still in existence."  Moreover, even assuming that the video sought by Defendants exists (which they have not shown), Defendants fail to provide any information about *how* the video they describe specifically shows that, for example, on any given date the Clarks and/or Clark Machine gave permission for Warren to use the Clark Machine credit card to purchase any particular item for his personal use.  Thus, Defendants fail to establish that the surveillance video sought is relevant to their defense at trial.

   Finally, Defendants argue that the credit card statements being sought will show the credit card activities of all of the holders of the Clark Machine credit card, not just the Defendants, and will show that the Clarks had knowledge of how Warren was using this credit card and not only approved of it, but instructed Warren to make these charges to the credit card.  However, Defendants overlook that credit card statements show only the basic information regarding charges that are made, such as the date of

11

the charge, the amount of the charge, and to whom the charge is made. Defendants fail to offer any explanation as to how this basic information regarding the credit card charges could possibly show that Warren had the Clarks' permission to make these charges. Once again, Defendants have failed to provide detailed information sufficient to bridge the gap between the fact that these charges occurred and their defense that the Defendants undertook the actions alleged in the Indictment with the permission of the Clarks and/or Clark Machine. Accordingly, Defendants have also failed to show that these credit card statements are relevant to their defense.

### III. Conclusion

Given the lack of specificity of Defendants' requests, the burdensome nature of producing the information requested and the irrelevance of the requested information to the defense in this case, the Court finds that compliance with the subpoenas issued by Defendants would be unreasonable and oppressive. Thus, for all of these reasons, quashing the subpoenas is appropriate under Fed. R. Civ. Pro. 17(c)(2).

Accordingly, the Court being fully and sufficiently advised, **IT IS HEREBY ORDERED** as follows:

1) The Motion to Quash Nine Subpoenas to Produce Documents filed by the United States [DE 41] and the Motion to Quash filed by Clark Machine and the Clarks [DE 45] are **GRANTED**;

2) The Nine Subpoenas issued by Defendants to Clark Machine and the Clarks are **QUASHED**;

3) The Defendants' joint Motion for Leave to File Sealed and *Ex Parte* Motion [DE 51] is **GRANTED** to the extent that it seeks leave from the Court to file the motion *ex parte* and one (1) day past the deadline provided by the Court, but is **DENIED** in all other respects.

This the 21st day of March, 2017.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge

13